488 P.3d 1065
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF LA PLATA, Colorado, Petitioner,
v.COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, Respondent.
Supreme Court Case Nos. 20SC365 & 20SC367 Supreme Court of Colorado.
June 7, 2021
Attorneys for Petitioner: Asimakis Iatridis, LLC, Maki Iatridis, Boulder, Colorado
Attorneys for Respondent: Philip J. Weiser, Attorney General, David Kreutzer, First Assistant Attorney General, Lukas Staks, Senior Assistant Attorney General, Denver, Colorado
Attorneys for Amicus Curiae Colorado Chapter of the Sierra Club: Foote Law Firm, LLC, Michael Foote, Louisville, Colorado
Attorney for Amicus Curiae Colorado Counties, Inc.: Bruce T. Barker, Weld County Attorney, Greeley, Colorado
Attorneys for Amici Curiae Eco-Cycle, Inc. and Conservation Colorado: Getches-Wilkinson Center, Chelsea Colwyn, Jaime Garcia, Boulder, Colorado
Attorneys for Amicus Curiae National Waste & Recycling Association: Faegre Drinker Biddle & Reath, LLP, James R. Spaanstra, Lynn M. Kornfeld, Andrew J. Ball, Denver, Colorado
En Banc
JUSTICE GABRIEL delivered the Opinion of the Court.
¶1 In these two related cases, the La Plata County Board of County Commissioners (the "County") challenges the Colorado Department of Public Health and Environment's (the "Department's") authority to bring an enforcement action against the County under the Solid Wastes Disposal Sites and Enforcement Act, sections 30-20-100.5 to -122, C.R.S. (2020) (the "SWA").
¶2 In case no. 20SC365, we granted certiorari to consider the County's contentions that the Department could not properly bring such an action against it because (1) the County is not a "person" within the meaning of the SWA and therefore it is not the proper target of an SWA enforcement action and (2) any such action is barred by the Colorado Governmental Immunity Act ("CGIA"), section 24-10-106, C.R.S. (2020). In case no. 20SC367, we granted certiorari to consider whether the County is entitled to recover its attorney fees as the prevailing party below.1 ¶3 We need not address the County's first contention because we conclude that whether or not the County is a person under the SWA, the Department still has the authority to bring an enforcement action against the County, as an owner or operator of an allegedly non-compliant, abandoned landfill. As to the County's second contention, we conclude that the Department's enforcement action is not barred by the CGIA because such an action is not a claim for injury that lies in tort or could lie in tort. And because the County is no longer the prevailing party here, we conclude that it is not entitled to an award of its attorney fees.
¶4 Accordingly, we vacate the court of appeals division's conclusion that the County is a "person" within the meaning of the SWA but otherwise affirm the division's judgments. I. Facts and Procedural History
¶5 The County owns the Bayfield Landfill, which has been closed for over twenty-five years. Prior to its closure, the landfill had been used as a municipal solid waste landfill for many years.
¶6 In 2004 and 2005, groundwater monitoring at the site revealed the presence of vinyl chloride in concentrations above our state's groundwater standard, and throughout the ensuing decade, the County and the Department cooperated to monitor and address that issue, although groundwater tests continued to reveal elevated levels of vinyl chloride.
¶7 Then, in or about late 2015, the Department discussed with the County a Compliance Order on Consent, which would have required expanded remediation efforts. The County, however, declined to enter into such an order. The Department thus issued a compliance order on its own, mandating, among other things, that the County undertake substantial additional measures to address the environmental issues at the site. The Department also reserved the right to impose "any additional conditions or requirements necessary for compliance with the [SWA] or the [Colorado Solid Waste] Regulations or to protect human health and the environment."
¶8 In response, the County moved to void the compliance order, asserting governmental immunity based on its contentions that the landfill's violation of the SWA constituted a public nuisance and a public nuisance claim is a tort that is barred by the CGIA. The County further argued that the SWA, under which the Department had issued its order, did not apply because the SWA applies only to "persons" and the County is not a "person" as defined in that statute.
¶9 An administrative law judge ("ALJ") subsequently heard the matter and rejected both of the County's contentions. Accordingly, the ALJ declined to void the Department's order.
¶10 The County then filed an interlocutory appeal in the district court, reiterating the arguments that it had made before the ALJ. In a lengthy and detailed written "Order on Appeal," the district court agreed with the County that the Department could not bring an enforcement action against it, reasoning, "Public nuisance is unquestionably a tort, and an action seeking an injunction against a disposal site deemed a public nuisance would be an action that could lie in tort." The court thus concluded, "Because this is an action that could lie in the traditional tort of public nuisance, the CGIA is applicable and the County is immune from liability." The district court, however, declined to address the question of whether the County met the definition of a "person" under the SWA. In the court's view, absent a showing of, among other things, irreparable injury (which the court could not find here), the court was not authorized to address that issue. And by separate order, the district court awarded the County its reasonable attorney fees, finding that the County was the prevailing party in this matter.
¶11 The Department appealed both the district court's immunity ruling and its fee award, and the County cross-appealed, arguing that the district court had improperly declined to review the ALJ's determination that the County qualified as a "person" under the SWA.
¶12 In a unanimous, published opinion, the division ultimately reversed the district court's ruling on the immunity question. Bd. of Cnty. Comm'rs v. Dep't of Pub. Health & Env't ("Bd. of Cnty. Comm'rs I "), 2020 COA 50, ¶ 1, ––– P.3d ––––. In so ruling, the division first concluded that counties are "person[s]" under the definition set forth in the SWA, which provides, " ‘Person’ means an individual, partnership, private or municipal corporation, firm, board of a metropolitan district or sanitation district, or other association of persons," § 30-20-101(3), C.R.S. (2020). Bd. of Cnty. Comm'rs I, ¶¶ 19-29. The division began by opining that the term "association of persons" is susceptible of multiple reasonable interpretations and could potentially include counties. Id. at ¶¶ 20-24. Looking, then, to the SWA's legislative history, the division concluded that the General Assembly had, over time, given the Department increasing authority, including the ability "to issue compliance orders for any violation of the SWA without exempting cities, counties, or any other entities." Id. at ¶ 28. The division thus discerned a legislative "intent that the Department have the power to bring enforcement actions against waste-facilities owned or operated by cities or counties," notwithstanding the fact that the legislature had never amended the definition of "person" under the SWA to include counties expressly. Id. at ¶ 29. In the division's view, "[a] different interpretation of ‘person’ would create an absurd result by allowing counties to avoid complying with the SWA and to evade oversight by the Department." Id.
¶13 The division then turned to the question of whether, despite the authority given to the Department under the SWA, the CGIA nonetheless barred the Department's enforcement action against the County. Id. at ¶ 30. The division assumed, without deciding, that the Department had suffered an injury for purposes of determining governmental immunity, but the division concluded that "the Department's enforcement action via the compliance order does not bring a claim that lies or could lie in tort." Id. at ¶ 33. In this regard, the division stated, "Because enforcement actions under the SWA are public actions that do not seek to compensate the state for personal injuries or specific property damage, we hold that the compliance order does not bring claims that lie or could lie in tort." Id. at ¶ 34.
¶14 In light of these determinations, the division concluded that the County's cross-appeal regarding the district court's refusal to consider the question of whether the County was a "person" under the SWA was moot, and the division therefore dismissed the cross-appeal. Id. at ¶¶ 42, 51. In addition, in a separate, unpublished opinion, the division unanimously reversed the district court's order awarding attorney fees to the County. Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't ("Bd. of Cnty. Comm'rs II "), No. 19CA0410, ¶ 1, 2020 WL 1492198 (Mar. 26, 2020). The division concluded that because it had reversed the district court's judgment on the merits in favor of the County, the County was no longer the prevailing party and therefore was not entitled to a fee award under section 13-17-201, C.R.S. (2020). Bd. of Cnty. Comm'rs II, ¶ 6.
¶15 The County then filed petitions for certiorari relating to both of the division's opinions, and we granted those petitions.
II. Analysis
¶16 We begin by noting the applicable standard of review and principles of statutory construction. We then consider the County's assertion that the Department could not properly bring an SWA enforcement action against it because it is not a "person" under the SWA. Concluding that the Department could properly bring an enforcement action against the County regardless of whether it is a "person" within the meaning of the SWA, we proceed to address whether such an action is barred by the CGIA, and we conclude that it is not. Lastly, we briefly address the County's claimed right to an attorney fee award.
A. Standard of Review and Principles of Statutory Construction ¶17 This case presents questions of law and statutory interpretation, all of which we review de novo. Elder v. Williams, 2020 CO 88, ¶ 17, 477 P.3d 694, 698 (statutory interpretation); People v. Struckmeyer, 2020 CO 76, ¶ 3, 474 P.3d 57, 58 (questions of law). In construing a statute, we seek to determine and give effect to the General Assembly's intent. Elder , ¶ 18, 477 P.3d at 698. In doing so, we apply words and phrases according to their plain and ordinary meanings. Id. Additionally, we look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. Id. If the statute is unambiguous, then we will apply it as written and we need not resort to other rules of statutory construction. Id. "If the statute is ambiguous, however, then we may look to the legislature's intent, the circumstances surrounding the statute's adoption, and the possible consequences of different interpretations to determine the statute's proper construction. A statute is ambiguous when it is reasonably susceptible of multiple interpretations." Id. (citation omitted). B. Propriety of an SWA Enforcement Action Against a County
¶18 The County first contends that the division below erred in concluding that the County is a "person" under the SWA. The County asserts that because it is not a "person" thereunder, the Department lacked the authority to bring an SWA enforcement action against it.
¶19 Although the County makes a compelling argument that the division erred in determining that a county is a "person" under the SWA, we need not decide that issue because we conclude that the Department had the authority to bring the present enforcement action against the County as an owner and operator of an allegedly non-compliant, abandoned landfill.
¶20 Section 30-20-113(1)(a), C.R.S. (2020), of the SWA provides:
A person shall not ... [a]bandon a solid wastes disposal site and facility or operate, maintain, or close such a facility in a manner that violates any of the provisions of this part 1, any rule or regulation adopted pursuant thereto, or any certificate of designation issued under [the SWA].
¶21 Section 30-20-113(2)(a), in turn, provides:
Whenever the department finds that any solid wastes disposal site and facility or any person is in violation of subsection (1) of this section, the department may issue an order requiring that the site and facility or person comply with any such requirement, rule, or certificate of designation and may request the attorney general to bring suit for injunctive relief or for penalties pursuant to this section.
(Emphases added.)
¶22 And the SWA states that "unless the context otherwise requires," " ‘[p]erson’ means an individual, partnership, private or municipal corporation, firm, board of a metropolitan district or sanitation district, or other association of persons." § 30-20-101(3).
¶23 As an initial matter, we acknowledge the force of the County's argument that counties are not listed within the definition of "[p]erson" and that the General Assembly knew how to include counties when it intended to do so, having specifically mentioned counties more than two dozen times throughout the SWA. See also § 30-20-1001(16), C.R.S. (2020) (defining "waste hauler" to include a county or "other association of persons," arguably suggesting that a county is distinct from an "association of persons"). We also acknowledge the County's concern about the potential unintended consequences of deeming a county an "association of persons," given the many times that associations of persons are identified throughout the Colorado Revised Statutes. See, e.g., § 15-1-103(1), C.R.S. (2020) (defining "Bank" to include "any person or association of persons, whether incorporated or not, carrying on the business of banking"); § 38-29-102(10), C.R.S. (2020) (defining "Owner" of a manufactured home to mean "any person, association of persons, firm, or corporation in whose name the title to a manufactured home is registered").
¶24 Conversely, as noted above, section 30-20-113(2)(a) authorizes the Department to issue a compliance order when either a "solid wastes disposal site and facility" or "any person" is in violation of subsection (1) of that section. And although subsection (1) refers only to the conduct of a "person," concluding that subsection (2)(a) can only refer to a "person" would arguably render the distinction in subsection (2)(a) between a "solid wastes disposal site and facility" and "any person" superfluous, which we cannot do. Elder, ¶ 18, 477 P.3d at 698.
¶25 In light of the foregoing, we conclude that the scope of subsection (2)(a) is ambiguous. On the one hand, it can reasonably be read as allowing the Department to issue orders only against "persons." On the other hand, it can reasonably be read as drawing an intentional distinction between a "solid wastes disposal site and facility" (through its owner or operator) and "any person."
¶26 Accordingly, we look to the rules of statutory construction. Elder , ¶ 18, 477 P.3d at 698. In this regard, we note that the legislative declaration to the SWA provides, in pertinent part:
Optimal solid waste management in Colorado should include the following elements: (I) The state government, local governments, and private companies and citizens of Colorado each must play important roles in the management of solid waste in Colorado.
(II) A statewide system of integrated solid waste management planning is necessary to meet Colorado's solid waste disposal needs over the next twenty years. Local governments and their citizens should be encouraged to work toward consensus concerning their solid waste disposal needs and concerning the types and numbers of solid wastes sites and facilities necessary or desirable in their areas.
....
(V) A strong component of statewide waste management efforts shall be the minimization of illegal disposal of solid wastes through the provision of the appropriate kinds and numbers of solid waste sites and facilities as needed to handle, treat, and dispose of solid waste in all areas of the state. § 30-20-100.5(1)(d), C.R.S. (2020) (emphases added).
¶27 Similarly, section 30-20-101.5(1) - (2), C.R.S. (2020), of the SWA provides for a solid waste management program to be "created in and administered by the [D]epartment" and requires the Department to "develop, implement, and continuously improve as necessary policies and procedures for carrying out its statutory responsibilities at the lowest possible cost while satisfying the legislative intent expressed in subsection (1) of this section."
¶28 In our view, such language reveals a legislative intent to provide the Department with broad regulatory authority to ensure an integrated statewide system of solid waste management planning.
¶29 In addition, we note that section 30-20-101, which sets forth the definitions to be applied under the SWA, begins, "As used in this part 1, unless the context otherwise requires ...." (Emphasis added.) Section 30-20-113(2)(a), in turn, refers to the Department's authority to issue compliance orders against either a "solid wastes disposal site and facility" or "any person," and given that a site and facility cannot be ordered to do anything except through their owners and operators, we believe that the context here necessarily suggests that the owners and operators of a site and facility are subject to a compliance order issued by the Department. If they were not, and if only a "person," as defined under the SWA, could be subject to such an order, then the reference to "solid wastes disposal site and facility" would be superfluous. Not only must we avoid such a construction, but also a determination that owners and operators of sites and facilities are subject to compliance orders is consistent with the broad regulatory authority that the legislature afforded the Department under the SWA.
¶30 Last, we note that we must avoid statutory constructions that produce illogical or absurd results. Elder , ¶ 18, 477 P.3d at 698. Here, it is undisputed that counties own the great majority of landfills throughout Colorado. In these circumstances, it would be illogical and absurd for us to conclude that counties are exempt from the regime of statewide regulatory enforcement set forth in the SWA. Assuredly, the legislature did not create a statewide regulatory regime for managing solid wastes and then exempt most landfills from the reach of that regulation. ¶31 For all of these reasons, we conclude that the SWA authorizes the Department to undertake enforcement actions against counties that own or operate landfills (or that owned or operated now-abandoned landfills) when such landfills are in violation of the SWA, regardless of whether counties are "persons" within the meaning of the SWA. And here, the County does not contest that it is such an owner and operator.
¶32 In so concluding, we are unpersuaded by the County's assertion that our construction ignores the dual regulatory authority provided by the SWA to the state and to counties. To be sure, under the SWA, a county is authorized to issue (or to refuse to issue) certificates of designation to those who wish to operate a landfill. See §§ 30-20-102, - 103(1), - 104, - 105(1), C.R.S. (2020). If the county declines to issue the certificate, then the matter ends, subject only to a request for judicial review in the appropriate district court. § 30-20-104(2). If, however, the county is inclined to issue the certificate, then the state has a regulatory role, and the county may not ultimately issue that certificate if the Department recommends disapproval. See §§ 30-20-103, -105(1). Moreover, as noted above, once the certificate is issued, the SWA gives the state an ongoing regulatory role. § 30-20-113(2). And contrary to the County's assertion, we perceive nothing in the SWA that divests the Department of regulatory authority and gives sole regulatory authority to a county when the landfill is (or was) owned by a county.
¶33 Nor does our view suggest that counties cannot be trusted to comply with the law, as the County here argues. "[C]ounties ... are political subdivisions of the state existing only for the convenient administration of the state government and created to carry out the will of the state." Bd. of Cnty. Comm'rs v. Hygiene Fire Prot. Dist., 221 P.3d 1063, 1068 (Colo. 2009). And although statutory counties have broad authority to control land use through, among other things, zoning and subdivision (and the decision to issue or deny certificates of designation under the SWA), "[t]he express or implied powers of [counties] are limited to those conferred by the General Assembly." Id. For these reasons, our decision that the Department can enforce the provisions of the SWA against the County simply reflects the state's authority to allocate powers to its various subdivisions and to retain for itself enforcement powers like those at issue here.
¶34 We likewise are unpersuaded by the County's contention that even if, in section 30-20-113(2)(a), the legislature intended to distinguish between a solid wastes disposal site and facility, on the one hand, and a person, on the other, any order issued against a site and facility must be issued against its owner or operator and under the applicable regulations, the owner or operator is defined as a person. Dep't of Pub. Health & Env't, 6 Colo. Code Regs. § 1007-2:1-1.2 (2021). For the reasons set forth above, we decline to adopt a construction that would afford the Department the authority to act when a site or facility is out of compliance but, at the same time, would exempt from enforcement the majority of sites and facilities in Colorado. Moreover, the County fails to explain how, if only a "person" can own or operate a solid wastes disposal facility and the County is not a "person," it legally could have owned and operated the facility at issue in the first place.
¶35 Accordingly, we conclude that the Department had the authority to issue its compliance order against the County, and we proceed to consider the County's assertion that the enforcement action was barred by the CGIA.
C. The CGIA and the Department's Enforcement Action ¶36 Pursuant to the CGIA, and subject to exceptions not applicable here, "A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant ...." § 24-10-106(1) (emphases added).
The CGIA's legislative declaration of policy makes clear that one of the CGIA's purposes is to protect the state and its political subdivisions from unlimited financial liability because "the state and its political subdivisions provide essential public services and functions" and "unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions." Elder , ¶ 20, 477 P.3d at 698 (quoting § 24-10-102, C.R.S. (2020) ). We have also observed, however, that because the CGIA derogates Colorado's common law, we will strictly construe its immunity provisions but broadly construe its waiver provisions. Id. ¶37 In deciding whether a claim lies or could lie in tort, the form of the complaint is not determinative. Id. at ¶ 21, 477 P.3d at 698. Instead, we must consider both the nature of the injury and the relief sought. Id. ¶38 Specifically, with respect to the nature of the injury, we first note that under the CGIA, "[i]njury" is defined as "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." § 24-10-103(2), C.R.S. (2020). When such an injury arises out of either conduct that is tortious in nature or the breach of a duty recognized in tort law, and when the relief seeks to compensate a claimant for that injury, "the claim likely lies in tort or could lie in tort for purposes of the CGIA." Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1003 (Colo. 2008).
¶39 With respect to the relief sought, although we have noted that the nature of the relief requested is not dispositive as to whether a claim lies in tort, we have said that it may inform our understanding of the nature of the injury and the duty purportedly breached. Elder, ¶ 23, 477 P.3d at 698. ¶40 Applying the foregoing principles here, we conclude that the Department's enforcement action was not barred by the CGIA. We reach this conclusion for several reasons.
¶41 First, the Department's compliance order was not a claim for any injury. As the Department notes, it suffered no injury itself because it does not own the affected groundwater. Instead, it was acting solely in its regulatory capacity to protect a public right and to prevent future potential injury to the public at large. See, e.g. , State v. Lead Indus. Ass'n, 951 A.2d 428, 448 (R.I. 2008) (noting that "a public right is the right to a public good, such as ‘an indivisible resource shared by the public at large, like air, water, or public rights of way’ ") (quoting City of Chicago v. Am. Cyanamid Co., 355 Ill.App.3d 209, 291 Ill.Dec. 116, 823 N.E.2d 126, 131 (2005) ); Thomas W. Merrill, Is Public Nuisance A Tort? , 4 J. Tort L. 1, 7, 9 (Oct. 2011) (noting that "[a]ll accounts of public nuisance agree on the description of the right the action is designed to protect: the right of the general public," and emphasizing that "[a] public nuisance is an injury to the entire community," rather than an injury to the use and enjoyment of any particular property). ¶42 Second, even if the Department could be said to have suffered an injury, we do not agree that the compliance order asserted a claim that did or could lie in tort. As noted above, a claim lies in tort or could lie in tort when the alleged injury arose out of conduct that is tortious in nature or out of a breach of a duty recognized in tort law. Robinson , 179 P.3d at 1003. "Whether a duty exists presents a question of law to be determined by the court. This question requires the court to determine whether the plaintiff's interest that has been infringed by the defendant's conduct is entitled to legal protection." N.M. ex rel. Lopez v. Trujillo, 2017 CO 79, ¶ 24, 397 P.3d 370, 374 (citation omitted). ¶43 Here, the County has not established that the Department suffered an injury arising out of the County's breach of any duty owed to the Department under tort law. To the contrary, the only apparent duty implicated in this case is the County's obligation to comply with the law, which, in and of itself, does not establish a duty to the Department. Specifically, although "[a] duty of care may be created by legislative enactment," the breach of such a duty "is actionable only by one who is a member of the class the statute was designed to protect, and only where the injury suffered by such person is the type of injury which the statute was enacted to prevent." Leake v. Cain, 720 P.2d 152, 162 (Colo. 1986). Nothing in the SWA, however, indicates that in enacting that statute, the General Assembly was seeking to protect the Department.
¶44 Third, as noted above, although not dispositive, the nature of the relief sought may inform our understanding of the nature of the alleged injury and the duty purportedly breached. Elder, ¶ 23, 477 P.3d at 698. Here, the Department filed no complaint and requested no compensatory damages or equitable relief in the nature of financial compensation to the Department. The Department merely initiated a regulatory proceeding seeking to ensure the County's compliance with its obligations under the SWA.
¶45 For all of these reasons, we conclude that the Department's enforcement action against the County was not barred by the CGIA.
¶46 In making this determination, we are not persuaded by the County's contention that section 30-20-113(3) provides that any violation of the SWA (or of any rule adopted pursuant thereto) shall be deemed to be a public nuisance and public nuisances are, by definition, torts. Notwithstanding the County's assertion to the contrary, public nuisance claims are not necessarily torts, particularly within the meaning of the CGIA. See, e.g. , Wood v. Picillo, 443 A.2d 1244, 1247 (R.I. 1982) ("Distinguished from negligence liability, liability in nuisance is predicated upon unreasonable injury rather than upon unreasonable conduct. Thus, plaintiffs may recover in nuisance despite the otherwise nontortious nature of the conduct which creates the injury.") (citation omitted); James A. Sevinsky, Public Nuisance: A Common-Law Remedy Among the Statutes, 5 Nat. Res. & Env't 29, 29 (1990) ("At heart, ... public nuisance is not a tort; rather, when asserted by the sovereign, it is essentially an exercise of the police power to protect public health and safety."); see also § 16-13-302, C.R.S. (2020) (including public nuisance in the Colorado criminal code and authorizing district attorneys to bring and maintain actions "to restrain, prevent, abate, and perpetually enjoin any such public nuisance").
¶47 Even were we to conclude that a public nuisance claim is generally a tort, however, we cannot agree that by using the phrase "public nuisance" in its legislative declaration concerning the SWA, the General Assembly intended to convert a regulatory scheme into a cause of action sounding in tort. On this point, the County has provided us with no applicable authority, and we have found none, suggesting that a state's act of enforcing its regulatory authority against a local governmental body is barred by the CGIA.
¶48 Accordingly, we agree with the division below that the County was not immune under the CGIA from the Department's enforcement action.
D. Attorney Fees
¶49 Finally, the County contends that it is entitled to attorney fees under section 13-17-201 because it was the prevailing party below.
¶50 Section 13-17-201 provides:
In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.
¶51 In light of our foregoing disposition, the County is no longer the prevailing party in this case. Accordingly, it is not entitled to an award of attorney fees under section 13-17-201.
III. Conclusion
¶52 In sum, we conclude that the Department has the authority to bring an SWA enforcement action against the County, as an owner or operator of an allegedly non-compliant abandoned landfill. We further conclude that the Department's enforcement action is not barred by the CGIA because such an action is not a claim for injury that lies in tort or could lie in tort. And we conclude that because the County is no longer the prevailing party in this matter, it is not entitled to an attorney fee award.
¶53 Accordingly, we vacate the division's conclusion that the County is a "person" within the meaning of the SWA but otherwise affirm the division's judgments on the merits and regarding the attorney fees.
1 Specifically, we granted certiorari to review the following issues:
1. Whether a county falls within the definition of "person" under the Solid Wastes Disposal Sites and Facilities Act.
2. Whether, under the Solid Wastes Act, an enforcement action brought against a public entity is a tort and thus barred by the Colorado Governmental Immunity Act (CGIA).
3. Whether the COA erred in denying La Plata its attorney fees because La Plata should be the prevailing party on appeal in the separate case of 18CA1551.