Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 6, 2023

**2023 CO 11**

**No. 21SC885, *Colorado State Board of Education v. Brannberg* — Statutory Interpretation — Judicial Review — Education Law.**

In this case, the supreme court considers whether the last sentence of section 22-30.5-108(3)(d), C.R.S. (2022), which provides that "[t]he decision of the state board [of education] shall be final and not subject to appeal," applies to *all* decisions of the Colorado State Board of Education under section 22-30.5-108(3), thereby precluding judicial review of all such decisions.

The court now concludes that, based on its plain language and the statutory scheme as a whole, section 22-30.5-108(3)(d)'s appeal-preclusion language applies to *all* final decisions of the State Board rendered under section 22-30.5-108, including when, as here, the State Board affirms the local board's denial of a charter school application during an initial appeal, thereby ending the matter and rendering a second appeal unnecessary.

Accordingly, the court reverses the judgment of the division below.

**2023 CO 11**

**Supreme Court Case No. 21SC885**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 20CA641

**Petitioners:**

Colorado State Board of Education and Douglas County School District RE-1,

v.

**Respondents:**

Judy A. Brannberg and John Dewey Institute, Inc.

**Judgment Reversed**
*en banc*
March 6, 2023

**Attorneys for Petitioner Colorado State Board of Education:**
Phillip J. Weiser, Attorney General
Michelle Berge, First Assistant Attorney General
Joseph A. Peters, Senior Assistant Attorney General
Jenna Zerylnick, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Petitioner Douglas County School District RE-1:**
Caplan and Earnest LLC
Elliot V. Hood
    *Boulder, Colorado*

Respondent Judy A. Brannberg, pro se
    *Littleton, Colorado*

Respondent John Dewey Institute, Inc., pro se
     *Littleton, Colorado*

**Attorneys for Amicus Curiae Colorado Charter School Institute:**
Phillip J. Weiser, Attorney General
Davin Dahl, Senior Assistant Attorney General
Noah Patterson, Assistant Solicitor General
     *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1     This case requires us to determine whether the last sentence of section 22-30.5-108(3)(d), C.R.S. (2022), of the Charter Schools Act (the "Act"), which provides that "[t]he decision of the state board [of education] shall be final and not subject to appeal," applies to *all* decisions of the Colorado State Board of Education ("State Board") under section 22-30.5-108(3), thereby precluding judicial review of all such decisions.[1]

¶2     Section 22-30.5-108 ("section 108") of the Act creates a four-step procedure in which a charter school applicant may potentially twice appeal an adverse decision of a local board of education to the State Board. The parties agree that section 108 precludes judicial review of State Board decisions rendered after a second appeal under section 108(3)(d). They disagree, however, as to whether this appeal-preclusion language also bars judicial review of final decisions of the State Board rendered after a first appeal under section 108(3)(a)—a scenario in which the State Board has affirmed the local board's decision to deny a charter school application, thus rendering a second appeal unnecessary.

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether the last sentence of section 22-30.5-108(3)(d)—"The decision of the state board shall be final and not subject to appeal"—applies to all state board decisions under section 108(3).

3

¶3 Applying the plain language of section 108 and the statutory scheme as a whole, we now conclude that section 108(3)(d)'s appeal-preclusion language applies to *all* final decisions of the State Board rendered under section 108, including when, as here, the State Board affirms the local board's denial of a charter school application during an initial appeal, thereby ending the matter and rendering a second appeal unnecessary.

¶4 Accordingly, we reverse the court of appeals division's ruling below declaring that final decisions of the State Board rendered after a first appeal are subject to judicial review, and we remand this case with instructions that the case be returned to the district court for the dismissal of plaintiff John Dewey Institute, Inc.'s ("JDI's") claim for lack of subject matter jurisdiction.

## I. Facts and Procedural History

¶5 In 2019, JDI submitted a charter school application to the Douglas County School Board. That local board denied JDI's application, and pursuant to the appeals procedure outlined in section 108, JDI appealed to the State Board. In the course of this initial appeal, the State Board affirmed the Douglas County School Board's denial of JDI's application, thus effectively ending the matter and eliminating any need for a second appeal under section 108(3)(c).

¶6 Pursuant to the State Administrative Procedure Act, § 24-4-106, C.R.S. (2022), JDI then filed a complaint for judicial review against defendants Douglas

4

County School Board and the State Board (collectively, "defendants"). In its complaint, JDI alleged that, in denying its application, defendants had failed to comply with a number of the Act's procedural requirements.

¶7 Defendants jointly moved, pursuant to C.R.C.P. 12(b)(1), to dismiss JDI's complaint for lack of subject matter jurisdiction. In this motion, defendants argued, as pertinent here, that the appeal-preclusion clause in section 108(3)(d) barred judicial review of the State Board's final decision.

¶8 The district court ultimately agreed and thus granted defendants' motion to dismiss. In so ruling, the court discerned "some ambiguity" in section 108(3)(d)'s finality and appeal-preclusion language, particularly given that that language appears only in the section of the statute concerning second appeals. In the court's view, the placement of this language in section 108(3)(d) raised a question as to whether the finality and appeal-preclusion language applied only to final decisions rendered by the State Board after a second appeal, or whether it applied to any final decision of the State Board, including final decisions made after a first appeal. The court ultimately "construe[d] this finality language to apply to all charter application decisions by the State Board, whether those are decisions in initial appeal or in second appeal." In support of this conclusion, the court explained that it would make no sense to read section 108 to permit judicial review when both the local board and the State Board denied an application but to

5

preclude such review when the State Board remands to the local board for reconsideration, the local board adheres to its position, and after a second appeal, the State Board relents and accepts the local board's denial. The court found further support for its position in the fact that article IX, section 1 of the Colorado Constitution vests in the State Board "general supervision" of public schools, and the Act gives the State Board the ultimate power to decide whether the local board's decision regarding a charter school application was "'contrary to the best interests of the pupils, school district, or community' as required by section 22-30.5-108(3)(d)."

¶9 JDI appealed, contending, as pertinent here, that the district court had erred in concluding that section 108(3)(d) precludes judicial review of State Board decisions rendered after a first appeal. *Brannberg v. Colo. State Bd. of Educ.*, 2021 COA 132, ¶ 14, 503 P.3d 893, 897. A division of the court of appeals agreed and concluded that the appeal-preclusion language in section 108(3)(d) was clear—"it does not explicitly or by necessary implication limit Colorado courts' jurisdiction to review first-appeal state board decisions." *Id.* at ¶ 25, 503 P.3d at 898.

¶10 The division found support for its conclusion in the facts that (1) the appeal-preclusion clause appears only in section 22-30.5-108(3)(d) (the provision detailing the State Board's second-appeal review); and (2) that section references

6

a "singular and definite 'decision' in a process containing two possible state board decisions." *Id.* at ¶¶ 25, 28–31, 503 P.3d at 898–99.

¶11    The division also relied on a comparison of the language and structure of section 108 with the language and structure of the appeal-preclusion language in section 22-30.5-107.5, C.R.S. (2022) ("section 107.5"). *Id.* at ¶¶ 25, 34–38, 503 P.3d at 898, 900. The division observed that section 107.5 details the appeals process for certain charter contract disputes. *Id.* at ¶ 34, 503 P.3d at 900. The division noted that, like section 108, section 107.5 allows parties to appeal to the State Board for review. *Id.* Unlike section 108, however, section 107.5 provides only for a single appeal. *Id.* And section 107.5 "concludes with a provision, set off in its own subsection, stating as follows: 'Any decision by the state board pursuant to this section shall be final and not subject to appeal.'" *Id.* (quoting § 22-30.5-107.5(6)). In the division's view, this statutory structure, in contrast with the structure of section 108, made it "abundantly clear" that section 107.5's appeal-preclusion language applies to any State Board decision under that section. *Id.* at ¶ 36, 503 P.3d at 900. And the division believed that its construction was reinforced by the facts that (1) section 107.5 adds "pursuant to this section" in its appeal-preclusion provision (language that does not appear in section 108(3)(d)); and (2) section 107.5(6)'s appeal-preclusion language refers to "[a]ny decision," rather than merely "the decision," which is the language in section 108(6)(d) (and

7

which the division believed concerns only a decision after a second appeal). *Id.* at ¶¶ 37–38, 503 P.3d at 900.

¶12 Finally, the division rejected defendants' suggestion that its interpretation of section 108 was absurd, noting that the division could "envision at least one plausible justification" for the General Assembly's according first and second appeals different degrees of finality. *Id.* at ¶ 44, 503 P.3d at 901. Specifically, in the division's view, barring judicial review of second appeals "affords the process a level of conclusiveness to what may be contentious conflicts between the state board and local boards," and "[n]o such justification undergirds a bar to review of first-appeal state board decisions." *Id.* at ¶¶ 45–46, 503 P.3d at 901. The division thus reversed the district court's order dismissing JDI's complaint and remanded the case for further proceedings. *Id.* at ¶ 48, 503 P.3d at 902.

¶13 Defendants petitioned this court for certiorari review, and we granted their petition.

## II. Analysis

¶14 We begin with the applicable standard of review and principles of statutory interpretation. We then consider the plain language of section 108(3) and the statutory scheme as a whole, and we conclude that when the State Board makes a final decision concerning the denial of a charter school application, that decision

8

is not subject to appeal, regardless of whether the State Board makes this determination after a first or second appeal.

## A. Standard of Review and Principles of Construction

¶15 We review questions of statutory construction de novo. *Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't*, 2021 CO 43, ¶ 17, 488 P.3d 1065, 1069. When interpreting statutes, we seek to discern and give effect to the General Assembly's intent. *Id.* In doing so, we apply words and phrases in accordance with their plain and ordinary meanings, and we consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts. *Id.* In addition, we will avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. *Id.* And in construing a statute, we must respect the General Assembly's choice of language. *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. We therefore do not add words to the statute or subtract words from it. *Id.*

¶16 If the statutory language is unambiguous, then we must apply it as written, and we need not resort to other rules of statutory construction. *Bd. of Cnty. Comm'rs*, ¶ 17, 488 P.3d at 1069.

## B. The State Board and the Act

¶17 Article IX, section 1(1) of the Colorado Constitution provides, "The general supervision of the public schools of the state shall be vested in a board of education

9

whose powers and duties shall be as now or hereafter prescribed by law."

Construing this provision, we have observed that the framers of our constitution

> contemplated general supervision to include direction, inspection, and critical evaluation of Colorado's public education system from a statewide perspective, that they intended the State Board to serve as both a conduit of and a source for educational information and policy, and that they intended the General Assembly to have broad but not unlimited authority to delegate to the State Board "powers and duties" consistent with this intent.

*Bd. of Educ. of Sch. Dist. No. 1 v. Booth*, 984 P.2d 639, 648 (Colo. 1999).

¶18 Article IX, section 15 of our constitution, in turn, sets forth the role of local school boards:

> The general assembly shall, by law, provide for organization of school districts of convenient size, in each of which shall be established a board of education, to consist of three or more directors to be elected by the qualified electors of the district. Said directors shall have control of instruction in the public schools of their respective districts.

¶19 We have construed "control of instruction" to require "power or authority to guide and manage both the action and practice of instruction as well as the quality and state of instruction." *Booth*, 984 P.2d at 648.

¶20 Against this background, the General Assembly adopted the Act to create a form of direct citizen participation in government through which members of a community can come together to build and operate a public school. § 22-30.5-102, C.R.S. (2022). The schools remain subject to the oversight and indirect control of

10

the local school board through a charter contract. *See* § 22-30.5-104, C.R.S. (2022). They are therefore known as charter schools. § 22-30.5-103(2), C.R.S. (2022).

¶21 Individuals or groups that want to create a charter school must first submit a charter school application to a local school board. §§ 22-30.5-106(1), -107, C.R.S. (2022). This application is a proposed agreement that details the proposed school's mission statement, goals, objectives, and pupil performance standards; provides evidence that an adequate number of parents, teachers, and pupils support the formation of the proposed school; and includes descriptions of the proposed school's educational program, governance, and operation. § 22-30.5-106(1).

¶22 Upon receipt of such an application, the local board reviews the application, holds public hearings, and evaluates the merits of the proposed charter school. *See* § 22-30.5-107(2). If the local board approves the proposal, then the charter school application "serve[s] as the basis for a contract between" the charter school and local board. § 20-30.5-105(1)(a), C.R.S. (2022). If, however, the local board denies the application, then an applicant has the right to obtain review of that adverse decision pursuant to the appeal and review process outlined in section 108. *See* § 22-30.5-107(3).

¶23 Because the resolution of the question before us turns on the proper construction of section 108, we quote the pertinent portions of that section at some length:

(1) Acting pursuant to its supervisory power as provided in section 1 of article IX of the state constitution, the state board, upon receipt of a notice of appeal or upon its own motion, may review decisions of any local board of education concerning the denial of a charter school application . . . , in accordance with the provisions of this section.

. . . .

(3) If the notice of appeal, or the motion to review by the state board, relates to a local board's decision to deny a charter application . . . , the appeal and review process shall be as follows:

(a) Within sixty days after receipt of the notice of appeal or the making of a motion to review by the state board and after reasonable public notice, the state board shall review the decision of the local board of education and make its findings. If the state board finds that the local board's decision was contrary to the best interests of the pupils, school district, or community, the state board shall remand such decision to the local board of education with written instructions for reconsideration thereof. Said instructions shall include specific recommendations concerning the matters requiring reconsideration.

(b) Within thirty days following the remand of a decision to the local board of education and after reasonable public notice, the local board of education, at a public hearing, shall reconsider its decision and make a final decision. . . .

(c) Following the remand, if the local board of education's final decision is still to deny a charter application . . . , a second notice of appeal may be filed with the state board within thirty days following such final decision.

(d) Within thirty days following receipt of the second notice of appeal or the making of a motion for a second review by the state board and after reasonable public notice, the state board, at a public hearing, shall determine whether the final decision of the local board of education was contrary to the best interests of the pupils, school district, or community. If such a finding is made, the state board shall remand such final decision to the local board with instructions to

approve the charter application . . . . *The decision of the state board shall be final and not subject to appeal.*

§ 22-30.5-108 (emphasis added).

¶24 As the foregoing makes clear, section 108(3)(a) details the State Board's initial review of the local board's decision. During this initial review, the State Board decides whether the local board's decision "was contrary to the best interests of the pupils, school district, or community." § 22-30.5-108(3)(a). If the State Board finds that it was, then the State Board must remand the decision to the local board with written instructions (including specific recommendations) for reconsideration thereof. *Id.*

¶25 Sections 108(3)(b) and (c), in turn, describe the processes by which the local board reconsiders the application on remand and reaches its "final decision." §§ 22-30.5-108(3)(b)–(c). If, after reconsideration, the local board decides to approve the application, then the local board and the charter applicant complete the charter contract, rendering a second appeal to the State Board unnecessary. *See* § 22-30.5-108(3)(b). If, however, the local board's final decision is again to deny the application, then the applicant may file a second notice of appeal with the State Board. § 22-30.5-108(3)(c).

¶26 Thereafter, the State Board, at a public hearing, must determine whether the local board's "final decision" was "contrary to the best interests of the pupils, school district, or community." § 22-30.5-108(3)(d). If the State Board decides that

13

it was, then the Board again remands the matter, this time with instructions to the local board to approve the application. *Id.* The State Board's decision "shall be final and not subject to appeal." *Id.*

¶27 The parties agree that the appeal-preclusion clause in section 108(3)(d) bars judicial review of State Board decisions rendered after a second appeal. They disagree, however, as to whether that section also bars judicial review of final State Board decisions rendered after a first appeal. JDI contends that section 108(3)(d) applies only to State Board decisions concerning charter school applications that are made after a second appeal under section 108. Thus, in its view, State Board decisions made after a first appeal are properly subject to judicial review. Defendants, in contrast, assert that section 108(3)(d) precludes judicial review of *all* State Board decisions concerning charter school applications, including final decisions rendered after a first appeal. For the following reasons, we agree with defendants.

¶28 First and foremost, section 108's plain language makes clear that the statute precludes judicial review of all final decisions of the State Board concerning charter school applications, whether rendered after a first or second appeal. As we have previously recognized, section 108 establishes "a scheme of review in which the State Board has final, unappealable, authority." *Acad. of Charter Schs. v. Adams Cnty. Sch. Dist. No. 12*, 32 P.3d 456, 462 (Colo. 2001). Specifically, when read

14

as a whole, section 108 plainly gives to the State Board the final word on matters concerning the approval of charter school applications, and when the State Board's work is complete, section 108(3)(d) makes clear that the Board's decision "shall be final and not subject to appeal." § 22-30.5-108(3)(d); *see also Booth*, 984 P.2d at 648 (noting "the Charter Schools Act's designation of the State Board as final arbiter of disputes involving local boards").

¶29 We are not persuaded otherwise by the fact that section 108(3)(a) is silent as to the effect of a State Board decision, after a first appeal, agreeing with the local board's decision to deny a charter school application. In such a scenario, it is unnecessary for the State Board to remand that decision to the local board for reconsideration or to conduct a second appeal before making a final decision. Rather, as the division below recognized, "[A] first-appeal affirmation would constitute the state board's ultimate decision on the matter." *Brannberg*, ¶ 10, 503 P.3d at 897. Accordingly, a final decision of the State Board rendered after a first appeal becomes "[t]he decision" of the State Board on the matter, and section 108(3)(d) plainly states, "The decision of the state board shall be final and not subject to appeal." § 22-30.5-108(3)(d). Such a conclusion is fully consistent with our prior statements recognizing that section 108 establishes a statutory scheme under which the State Board "has final, unappealable, authority," *Acad. of*

15

*Charter Schs.*, 32 P.3d at 462, and is the "final arbiter" of disputes in this area, *Booth*, 984 P.2d at 648.

¶30 Moreover, section 108 nowhere gives a charter school applicant standing to file a lawsuit or the right to seek judicial review when the State Board renders a final decision after a first appeal. This is significant because when the legislature intended to confer such standing or rights of judicial review, it has done so expressly. *See, e.g.*, § 22-30.5-104(7)(b) ("The charter school shall have standing to sue and be sued in its own name for the enforcement of any contract created pursuant to this paragraph (b)" (concerning agreements between a charter school and others for the use of a school building and grounds, the operation and maintenance thereof, and the provision of certain services, activities, or undertakings).); §§ 22-63-302(10)(a)–(d), C.R.S. (2022) (allowing a teacher who was dismissed by a local school board to seek review in the court of appeals and providing that the court of appeals must review the record "to determine whether the action of the board was arbitrary or capricious or was legally impermissible").

¶31 Here, to the extent that section 108 says anything about judicial review, it provides that the State Board's decision is final and *not* subject to appeal. *See* § 22-30.5-108(3)(d). As noted above, we may not add words to the statute to create a right of judicial review that the statute nowhere affords. *See UMB Bank, N.A.*, ¶ 22, 408 P.3d at 840. And interpreting the statute to allow judicial review in

circumstances like those before us would mean that the judiciary has the final say in such circumstances, directly contrary to the statutory scheme, which gives the final word to the State Board. *See Acad. of Charter Schs.*, 32 P.3d at 462; *Booth*, 984 P.2d at 648.

¶32 Second, we deem it significant that the State Board's analysis is the same during both a first and second appeal. Specifically, in both contexts, the State Board determines whether the local board's decision "was contrary to the best interests of the pupils, school district, or community." §§ 22-30.5-108(3)(a), (d). And in both scenarios, the State Board effectively "substitute[s] its judgment for that of the local board." *Booth*, 984 P.2d at 651. Accordingly, unlike the division below, we perceive no textual basis in the statute for creating a right of judicial review in connection with (and imposing a lesser degree of finality on) final decisions of the State Board rendered after a first appeal. To the contrary, like the district court, we can discern no basis for affording an applicant a right of judicial review after the local board and the State Board agree at the outset to deny a charter school application, when, as all parties here agree, the statute precludes judicial review if the State Board remands to the local board to reconsider, the local board persists in its denial, and the State Board ultimately agrees with the local board's decision to deny the application. In both cases, the local board has voted to deny an application, and the State Board has affirmed that decision. In our view,

17

under the plain language of section 108, the State Board's decision should be afforded the same level of finality in both scenarios.

¶33 Third, interpreting section 108 to authorize judicial review of State Board decisions concerning charter school applications after a first appeal is inconsistent with the General Assembly's intent to expedite consideration of charter school applications. *See* §§ 22-30.5-107 to -108 (setting forth the timelines for the filing of an application, the local board's consideration at each stage, and the initial and, if necessary, second appeals to the State Board); *Booth*, 984 P.2d at 652 (noting that "the entire application process indicates legislative intent for efficiency and decisiveness"). Specifically, the Act envisions a process by which a charter school application can be filed early in one school year so that the charter school, if approved, can begin operating in the next school year. *See* §§ 22-30.5-107 to -108. Allowing judicial review in a scenario like that present here would undermine the expeditious process that the legislature has created.

¶34 Finally, although we have not directly addressed the precise issue now before us, our case law regarding the State Board's authority is fully consistent with the decision that we reach today.

¶35 In *Booth*, 984 P.2d at 642, for example, the Denver School Board challenged the constitutionality of the second-appeal provision of section 108. The question presented was whether the General Assembly could constitutionally "authorize

18

the State Board of Education to order a local school board to approve a charter school application that the local board ha[d] rejected when the State Board finds approval to be in the best interests of the pupils, school district, or community." *Id.* We concluded that the second-appeal provision was constitutional. *Id.*

¶36    In reaching this conclusion, we first discussed the State Board's "general supervision" power under article IX, section 1(1) of the Colorado Constitution and determined that the framers of our constitution contemplated "general supervision" to include the State Board's "direction, inspection, and critical evaluation of Colorado's public education system from a statewide perspective." *Id.* at 648. We then examined the derivation of the State Board's powers, noting how, in 1877, the legislature had established a procedure by which a person aggrieved by a local school board's decision could appeal that decision first to the county superintendent and then to the State Board, with the State Board's decision being final. *Id.* at 648 (citing ch. 92, sec. 81, 87, 1877 Colo. Gen. Laws §§ 2527, 2533, at 836–37). We explained that this statutory assignment of authority to the State Board is analogous to the role of the State Board in section 108 and provided "legislative precedent for the Charter Schools Act's designation of the State Board as final arbiter of disputes involving local boards." *Id.* In light of the foregoing, and the respective roles of the State Board and local boards of education, we concluded that the State Board did not unconstitutionally infringe on the Denver

19

School Board's control of instruction when it ordered the approval of the charter school application at issue. *Id.* at 655.

¶37 Our interpretation today similarly recognizes and gives life to the General Assembly's designation of the State Board as the final arbiter of disputes involving local boards in this area.

¶38 In *Academy*, 32 P.3d at 458–59, we considered whether a charter school may seek judicial enforcement of the charter contract with its local school district, and we concluded, as pertinent here, that disputes between a charter school and a district arising out of the statutorily required portions of a charter contract are not justiciable but are reserved for determination by the State Board.

¶39 Specifically, in *Academy*, a charter school sued its authorizing district to enforce both the "service provisions" of the contract and the statutorily mandated "governing policy provisions." *Id.* at 467–68. We concluded that the "service provisions" of the contract, which related to the "use of a school building and grounds" and the "operation and maintenance" thereof, were judicially enforceable under express statutory language. *Id.* at 468 (citing § 22-30.5-104(7)(b)). In contrast, we concluded that disputes over the implementation of the "governing policy provisions," which consisted of the "charter school application and all agreements and requests releasing the charter school from school district policies[,]" are "funneled into the administrative

system embodied by section 22-30.5-108." *Id.* at 462. Turning then to section 108, we explained:

> The processes outlined in section 22-30.5-108 set forth a scheme of review in which the State Board has final, unappealable, authority. § 22-30.5-108(3)(d). Because the governing policy provisions of a charter contract are formed subject to the State Board's final authority, *see* § 22-30.5-107, the State Board has complete statutory authority to settle any disputes arising from implementation of those governing policy provisions of that contract. In essence, the governing policy provisions of the charter contract are not subject to judicial review.

*Id.* We thus concluded, "[A]ny decision rendered by the State Board under section 22-30.5-108 is final and not subject to appeal." *Id.* at 468.

¶40 In our view, the same principles relating to the force and effect of section 108's statutory language apply here.

¶41 We are not persuaded otherwise by any of JDI's arguments. In its answer brief, JDI raised many merits-based contentions and policy claims. JDI did not, however, address the narrow issue of statutory interpretation on which we granted certiorari. Nor did JDI respond in any way to the points made by defendants in their joint opening brief, which did address the issue before us. JDI's merits-based arguments are simply not before us.

### III. Conclusion

¶42 Because the State Board in this case affirmed the Douglas County School Board's decision to deny JDI's charter school application after JDI's first appeal, and because that determination was the State Board's final decision on the matter,

21

we conclude that under the plain and unambiguous language of section 108(3)(d) and the statutory scheme as a whole, the State Board's decision is not subject to judicial review.

¶43 Accordingly, we reverse the judgment of the division below, and we remand this case with instructions that the case be returned to the district court for the dismissal of JDI's claim for lack of subject matter jurisdiction.