Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 1, 2023

**2023 CO 20**

**Nos. 22SA211 & 21SA138, *Front Range Feedlots, LLC v. Rein*—Water Law—Authority of State Engineer—Mandatory Injunction by Water Court.**

In these related cases, the supreme court considers whether (1) the State Engineer had authority to issue, and certain terms of, an Order to Comply with a substitute water supply plan (the "SWSP") issued to Front Range; (2) the water court abused its discretion when it issued its Order Granting Mandatory Injunction requiring Front Range to comply with the SWSP and the Order to Comply; and (3) the appeal by the State Engineer and the Division Engineer for Water Division 1 (the "Engineers") in case no. 21SA138 becomes moot if the court upholds the water court's determinations in case no. 22SA211.

The court now concludes that (1) under the plain language of the applicable statutes, the State Engineer had the authority to issue the Order to Comply; (2) the State Engineer had the authority to enforce the terms and conditions of the SWSP after the expiration of that SWSP and Front Range's withdrawal of its related water

court application; (3) the State Engineer properly attached the SWSP terms and conditions to Front Range, rather than to the water rights at issue; (4) the State Engineer had jurisdiction to require the replacement of depletions from pre-application pumping; and (5) the water court properly exercised its discretion in ordering Front Range to acquire additional replacement sources.  In addition, the court concludes that the Engineers are entitled to recover reasonable attorney fees and costs under section 37-92-503(1)(b), C.R.S. (2022), including those incurred in the appeal in case no. 22SA211.  And in light of the court's foregoing determinations, the court concludes that the Engineers' appeal in case no. 21SA138 is moot.

The court thus affirms the water court's judgment in case no. 22SA211, remands that case to the water court to determine the reasonable attorney fees and costs to be awarded, and dismisses the Engineers' appeal in case no. 21SA138.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2023 CO 20

**Supreme Court Case No. 22SA211**
*Appeal from the District Court*
District Court, Water Division 1, Case No. 21CW3111
Honorable Todd L. Taylor, Water Judge

### Plaintiff-Appellant:

Front Range Feedlots, LLC,

v.

### Defendants-Appellees:

Kevin G. Rein, State Engineer; and Corey DeAngelis, Division Engineer for Water Division 1.

### Judgment Affirmed
*en banc*
May 1, 2023

\* \* \* \* \*

**Supreme Court Case No. 21SA138**
*Appeal from the District Court*
District Court, Water Division 1, Case No. 17CW3043
Honorable Todd L. Taylor, Water Judge

Concerning the Application for Water Rights of Front Range Feedlots, LLC in Larimer County

**Opposers-Appellants:**

Kevin G. Rein, State Engineer; and Corey DeAngelis, Division Engineer for Water Division 1,

v.

**Applicant-Appellee:**

Front Range Feedlots, LLC;

and

**Opposers-Appellees:**

Colorado Division of Parks and Wildlife and the Parks and Wildlife Commission; Northern Colorado Water Conservancy District; Arapahoe County Water and Wastewater Authority; East Cherry Creek Valley Water and Sanitation District; Cache La Poudre Water Users Association; New Cache La Poudre Irrigating Company; and Ogilvy Irrigating and Land Company.

---

**Appeal Dismissed**
*en banc*
May 1, 2023

---

**Attorneys for Front Range Feedlots, LLC:**
Lawrence Custer Grasmick Jones & Donovan, LLP
David P. Jones
Wesley S. Knoll
David L. Strait
    *Johnstown, Colorado*

**Attorneys for Kevin G. Rein, State Engineer; and Corey DeAngelis, Division Engineer for Water Division 1:**
Philip J. Weiser, Attorney General
Paul L. Benington, First Assistant Attorney General
William D. Davidson, Assistant Attorney General
    *Denver, Colorado*

No appearance on behalf of: Colorado Division of Parks and Wildlife and the Parks and Wildlife Commission; Northern Colorado Water Conservancy District; Arapahoe County Water and Wastewater Authority; East Cherry Creek Valley Water and Sanitation District; Cache La Poudre Water Users Association; New Cache La Poudre Irrigating Company; and Ogilvy Irrigating and Land Company.

**JUSTICE GABRIEL** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 These related cases principally involve challenges by Front Range Feedlots, LLC to certain orders issued by State Engineer, Kevin G. Rein (the "State Engineer"), and the District Court for Water Division 1 (the "water court"). Specifically, Front Range challenges the State Engineer's authority to issue, and certain terms of, an Order to Comply with a February 4, 2020 substitute water supply plan issued to Front Range (the "2020 SWSP"). Front Range further contends that the water court abused its discretion in several ways when it issued its Order Granting Mandatory Injunction (the "Injunction"), requiring Front Range to comply with the 2020 SWSP and the Order to Comply.[1] The parties agree

---

[1] Specifically, in case no. 22SA211, Front Range raises the following five issues:

1. Whether the Engineers have statutory authority under C.R.S. §§ 37-92-501 and 502, and/or C.R.S. § 37-92-308(4) to issue the Order to Comply.

2. Whether the state engineer misapplied the law, and/or abused its discretion when issuing the Order to Comply, by ordering that the 2020 SWSP terms and conditions approved by the state engineer pursuant to subsection 308(4), and the applicant's compliance therewith continue after expiration of the SWSP and/or withdrawal of the water court application.

3. Whether the state engineer acted contrary to law, and/or abused its discretion when issuing the Order to Comply, by ordering SWSP terms and conditions to attach to the Applicant, rather than

4

that if we uphold the orders in case no. 22SA211, then the appeal by the State Engineer and the Division Engineer for Water Division 1 (the "Division Engineer" and, collectively with the State Engineer, the "Engineers") in related case no. 21SA138 becomes moot.

¶2 We now conclude that (1) under the plain language of the applicable statutes, the State Engineer had the authority to issue the Order to Comply; (2) the State Engineer had the authority to enforce the terms and conditions of the 2020 SWSP after the expiration of that SWSP and Front Range's withdrawal of its related water court application; (3) the State Engineer properly attached the 2020 SWSP terms and conditions to Front Range, rather than to the water rights at issue; (4) the State Engineer had jurisdiction to require the replacement of depletions from pre-application pumping; and (5) the water court properly exercised its

---

the subject water rights, in contravention of this Court's holding in *WAS v. Aurora*.

4. Whether jurisdiction existed for the Engineers to require replacement of potential out-of-priority well depletions from preapplication pumping of the Horton Wells as a term and condition of the 2020 SWSP and/or the Order to Comply.

5. Whether the water court abused its discretion when entering the Mandatory Injunction in that said injunction exceeds the scope of the Order to Comply and the 2020 SWSP by requiring Front Range to "acquire" additional unidentified replacement sources if the approved replacement sources are insufficient.

discretion in ordering Front Range to acquire additional replacement sources. In addition, we conclude that the Engineers are entitled to recover reasonable attorney fees and costs under section 37-92-503(1)(b), C.R.S. (2022), including those incurred in the appeal in case no. 22SA211. And in light of our foregoing determinations, we conclude that the Engineers' appeal in case no. 21SA138 is moot.

¶3 Accordingly, we affirm the water court's judgment in case no. 22SA211, remand that case to the water court to determine the reasonable attorney fees and costs to be awarded, and dismiss the Engineers' appeal in case no. 21SA138.

## I. Facts and Procedural History

¶4 Front Range and another entity own and operate adjacent beef cattle feedlots collectively known as the Wellington Feedyard. For many years, water was supplied to the feedlots from Horton Well No. 1 and Horton Well No. 2 (collectively the "Wells"), which had been decreed for irrigation with appropriation dates in June 1946. In 2016, however, the Colorado Division of Water Resources received a complaint alleging that Front Range was, in fact, using the Wells for its cattle feeding operation, and not for irrigation. Front Range representatives confirmed at that time that Front Range had been using the Wells for the cattle feeding operation for thirty years or more.

¶5 In light of the foregoing, in August 2016, the Division Engineer issued a show cause order requiring Front Range to either (1) "physically and permanently disconnect the discharge pipe" from the Wells and cease and desist non-decreed and non-permitted uses or (2) provide evidence that the Wells have a valid water right and/or well permit and augmentation plan or an SWSP to be used in the cattle feeding operation.

¶6 Front Range responded by applying for an emergency SWSP, and the State Engineer granted that application for a term ending March 17, 2017. Thereafter, Front Range filed in the water court an application for underground water rights and approval of an augmentation plan, as well as an application to extend the previously approved emergency SWSP through December 31, 2017 (or until February 28, 2018, if further extended). Front Range acknowledged in its water court application that diversions from the Wells cause depletions to Boxelder Creek but stated that, to the extent such depletions were out-of-priority, Front Range's proposed augmentation plan would "replace such out of priority depletions as necessary to prevent injury to vested water rights."

¶7 Over the next few years, while its water court application remained pending, Front Range requested, and the State Engineer granted, a number of additional SWSPs. As a condition of Front Range's ongoing out-of-priority depletions, the State Engineer required Front Range to replace all such depletions

in time, location, and amount to prevent injury to senior water rights and to replace its delayed depletions until those depletions no longer affected the surface stream. Front Range did not challenge these conditions by seeking judicial review in the pending water court case. Instead, under the terms of the SWSP, Front Range proceeded to use the Wells, causing out-of-priority depletions.

¶8 As pertinent here, the State Engineer approved the final SWSP—the 2020 SWSP—on February 4, 2020. The 2020 SWSP contained a number of conditions that are at issue in this appeal. Specifically, the 2020 SWSP provided that "depletions will be replaced at 100% of estimated pumping (steady state)." The 2020 SWSP further noted that Front Range had proposed to use water "owned or leased by Front Range from any other source legally available for augmentation and which can be provided in the amount, at the time, and at the location required to replace out of priority depletions from the Horton Wells." And the 2020 SWSP stated that additional sources of replacement water in the 2020 SWSP could be used only if Front Range complied with a Water Division 1 protocol regarding the use of replacement sources not specifically identified in an SWSP or augmentation plan.

¶9 After observing that depletions had been occurring since 1985, and after noting the estimated and actual water usage since that time, the 2020 SWSP went on to require Front Range to provide replacement water to cover all out-of-priority

8

depletions and, if necessary, to curtail pumping if the depletions affected a senior water right. Specifically, the 2020 SWSP provided:

> Replacement water shall be made available to cover all out-of-priority depletions in time, place, and amount and shall be made available under the direction and/or approval of the water commissioner. . . . Replacement of lagged depletions shall continue until there is no longer an effect on stream flow.
>
> . . . .
>
> If any well in this SWSP causes depletions that affect a senior surface water right at a location where this SWSP cannot provide replacement water, the well is subject to curtailment until arrangements are made to provide replacement water at a point which will preclude injury to the calling senior surface water right. Well owners are responsible for providing replacement water in time, location, and amount to offset all out-of-priority depletions.

¶10 Ten months after the State Engineer approved the 2020 SWSP, Front Range filed a motion to withdraw its then-pending water court application for underground water rights and for approval of an augmentation plan. In this motion, Front Range stated that, as of June 29, 2020, it had ceased its use of the Wells under the 2020 SWSP and had begun relying on "a newly developed local water supply for the feedlots that does not involve or necessitate the use of groundwater wells or a plan for augmentation."

¶11 The Engineers opposed Front Range's motion to withdraw its water court application, requesting, in pertinent part, that the water court either (1) deny the motion to withdraw the application and require Front Range to proceed to obtain

a decreed plan for augmentation or (2) order Front Range to curtail all diversions through the Wells until further order of the court and to continue to make replacements under the then-current SWSP of all lagged depletions until there is no longer an effect on stream flow.

¶12 In March 2021, the water court granted Front Range's motion, concluding, in part, that the Engineers had not asserted any prejudice to *their* legal interests if Front Range were permitted to withdraw its application but rather had relied on presumed injury to *other* water users if Front Range were not required to replace its past out-of-priority depletions. In the water court's view, this type of prejudice is not what is contemplated by C.R.C.P. 41(a)(2), concerning voluntary dismissals. As a condition of Front Range's withdrawal of its application, however, the water court ordered that the Wells "shall not operate unless included in a court-approved augmentation plan, or as part of a lawfully-approved substitute water supply plan."

¶13 The State Engineer appealed this order in case no. 21SA138, and that appeal is now before us.

¶14 Meanwhile, in May 2021, the State Engineer issued an Order to Comply with the 2020 SWSP. According to the State Engineer, Front Range was in violation of the 2020 SWSP by not providing replacement water to prevent injury. The State Engineer further observed that since December 2020, Front Range had not

10

provided the daily accounting required by the 2020 SWSP. The Engineer thus assumed that replacement water had not been provided during that period, thereby causing injury to senior water rights. And the State Engineer stated, "Past pumping of the Horton Wells for commercial livestock watering uses will continue to deplete the South Platte River stream system for many years."

¶15 In light of the foregoing, the State Engineer ordered Front Range to, among other things,

> [p]rovide replacement water to the stream system to cover all out-of-priority depletions in time, place, and amount, from the replacement sources approved under the 2020 Approval [i.e., the 2020 SWSP] under the direction and/or approval of the water commissioner. . . . Replacement of lagged depletions must continue until there is no longer an effect on stream flow.

¶16 The State Engineer further ordered Front Range to provide plans for (1) near-term replacement, describing how Front Range "will provide replacement of depletions through December 2023 or longer, using sources in the 2020 Approval, which may include sources in addition to the sources specifically identified in the 2020 Approval if approved by the Division Engineer . . . "; and (2) "long-term replacement of the remainder of the lagged depletions on [an attached depletion schedule], in time, place, and amount."

¶17 Finally, the State Engineer curtailed the use of the Wells and ordered that they not operate unless they were included in a court-approved augmentation plan or as part of a lawfully approved SWSP.

11

¶18    Front Range did not comply with the foregoing terms. Instead, it filed in the water court a complaint for judicial review, arguing that the Order to Comply was invalid because the State Engineer did not have the authority to issue it. In response, the State Engineer asked the water court to uphold the Order to Comply as a lawful order and filed a counterclaim seeking (1) a mandatory injunction requiring Front Range to take the actions required by the Order to Comply and (2) recovery of the Engineers' attorney fees and costs incurred in prosecuting their counterclaim.

¶19    The water court subsequently granted judgment in favor of the Engineers, affirming the State Engineer's Order to Comply as a lawful order. In so ruling, the court concluded, as pertinent here:

> Because Front Range never challenged the conditions it now argues are unlawful and proceeded to make out-of-priority depletions under the terms of a substitute water supply plan—which has resulted in injury to senior water rights from the delayed depletions that affect the surface stream—the state engineer has the authority to enforce the replacement requirements that were imposed by the substitute water supply plan.

¶20    The water court thus ordered that Front Range comply with the replacement water conditions outlined in the Order to Comply and directed the Engineers to file a proposed form of injunction, which they subsequently did and which the court signed. This Injunction required Front Range to abide by the terms of the

12

Order to Comply and the 2020 SWSP by taking a number of actions that are relevant in the present appeal.

¶21 First, to the extent that depletions shown on the depletion schedule attached to the Order to Comply that accrued to the stream in May 2022 and thereafter were out of priority, Front Range was required to "provide replacement water to the stream system to replace those depletions in time, place, and amount."

¶22 Second, to the extent that the depletions required to be replaced could not be replaced in time, location, and amount using the replacement sources specifically described in the 2020 SWSP, then Front Range was required to "acquire the right to use additional replacement sources capable of replacing the depletions in time, place, and amount."

¶23 Finally, the water court ordered Front Range to pay the Engineers' reasonable attorney fees and costs of prosecuting their counterclaim for injunctive relief.

¶24 Front Range then appealed the water court's orders, and its appeal is now before us in case no. 22SA211.

## II. Analysis

¶25 We begin by noting our well-established principles of statutory construction and the standards of review that apply in this case. Next, we address Front

13

Range's issues in turn, setting forth the pertinent legal principles and then applying those principles to the facts before us.

## A. Principles of Statutory Construction and Applicable Standards of Review

¶26     When interpreting statutes, we seek to discern and give effect to the General Assembly's intent. *Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't*, 2021 CO 43, ¶ 17, 488 P.3d 1065, 1069. In doing so, we apply words and phrases in accordance with their plain and ordinary meanings, and we consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts. *Id.* In addition, we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. *Id.* And in construing a statute, we must respect the General Assembly's choice of language. *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. We therefore do not add words to the statute or subtract words from it. *Id.* If the statutory language is unambiguous, then we must apply it as written, and we need not resort to other rules of statutory construction. *Bd. of Cnty. Comm'rs*, ¶ 17, 488 P.3d at 1069.

¶27     We review questions of statutory construction de novo. *Id.* We also review an administrative agency's conclusions of law de novo. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010).

14

¶28 The judicial review standards set forth in the Administrative Procedure Act ("APA") apply to decisions of the State Engineer unless they conflict with a specific statutory provision. *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora*, 221 P.3d 399, 418 (Colo. 2009) ("*WAS*"). Section 24-4-106(7), C.R.S. (2022), of the APA provides, in pertinent part, that a court shall affirm an agency decision as follows:

> (b) The court shall hold unlawful and set aside the agency action and shall restrain the enforcement of the order or rule under review, compel any agency action to be taken that has been unlawfully withheld or unduly delayed, remand the case for further proceedings, and afford other relief as may be appropriate if the court finds that the agency action is:
>
> (I) Arbitrary or capricious;
>
> (II) A denial of statutory right;
>
> (III) Contrary to constitutional right, power, privilege, or immunity;
>
> (IV) In excess of statutory jurisdiction, authority, purposes, or limitations;
>
> (V) Not in accord with the procedures or procedural limitations of this article 4 or as otherwise required by law;
>
> (VI) An abuse or clearly unwarranted exercise of discretion;
>
> (VII) Based upon findings of fact that are clearly erroneous on the whole record;
>
> (VIII) Unsupported by substantial evidence when the record is considered as a whole; or
>
> (IX) Otherwise contrary to law . . . .

15

*Accord WAS*, 221 P.3d at 417–18. "APA review is consistently applied as highly deferential to the acting administrative agency." *Id.* at 418.

¶29 In addition, to the extent that Front Range challenges the terms of the Injunction issued by the water court, we note that we review a trial court's grant of injunctive relief for an abuse of discretion. *See City of Colo. Springs v. Blanche*, 761 P.2d 212, 218 (Colo. 1988). "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law." *Cath. Health Initiatives Colo. v. Earl Swensson Assocs., Inc.*, 2017 CO 94, ¶ 8, 403 P.3d 185, 187.

## B. State Engineer's Authority to Issue the Order to Comply

¶30 Turning then to the issues before us, we note first that Front Range contends that the State Engineer lacked the authority to issue the Order to Comply. We disagree.

¶31 Section 37-92-308(4)(a), C.R.S. (2022), authorizes the State Engineer, in certain circumstances, to issue SWSPs while an applicant's corresponding application for approval of a plan for augmentation or change of water right is pending in the water court:

> [I]f an application for approval of a plan for augmentation . . . or change of water right has been filed with a water court and the court has not issued a decree, the state engineer may approve the temporary operation of such plan, contract, or change of water right as a substitute water supply plan if the following conditions are met:

16

. . . .

(IV)(A) The state engineer . . . has determined that the operation and administration of such plan will replace all out-of-priority depletions in time, location, and amount and will otherwise prevent injury to other water rights and decreed conditional water rights.

. . . .

(C) The state engineer shall impose such terms and conditions as are necessary to ensure that these standards are met.

¶32 Section 37-92-501(1), C.R.S. (2022), in turn, authorizes the State Engineer to administer, distribute, and regulate the waters of the state in conformity with the Engineer's orders:

The state engineer and the division engineers shall administer, distribute, and regulate the waters of the state in accordance with the constitution of the state of Colorado, the provisions of this article and other applicable laws, *and written instructions and orders of the state engineer*, in conformity with such constitution and laws . . . .

(Emphasis added.)

¶33 Section 37-92-502, C.R.S. (2022), then gives the State Engineer the authority to issue orders to implement section 501:

(1) The state engineer or the division engineers shall issue to the owners or users of water rights and to the users of waters of the state *such orders as are necessary to implement the provisions of section 37-92-501*, including, but not limited to, the orders specified in subsections (2) to (7) of this section. . . .

(2)(a) Each division engineer . . . shall . . . order the total or partial discontinuance of any diversion in his division to the extent that the water being diverted is required by persons entitled to use water under water rights having senior priorities, but no such

17

discontinuance shall be ordered unless the diversion is causing or will cause material injury to such water rights having senior priorities . . . .

(Emphasis added.)

¶34 Finally, section 37-92-501.5, C.R.S. (2022), gives the State Engineer broad authority to administer the waters under its jurisdiction to encourage and develop augmentation plans and voluntary exchanges of water:

Consistent with the decisions of the water judges establishing the basis for approval for plans for augmentation and for the administration of groundwater, the state engineer and division engineers shall exercise the broadest latitude possible in the administration of waters under their jurisdiction to encourage and develop augmentation plans and voluntary exchanges of water and may make such rules and regulations and shall take such other reasonable action as may be necessary in order to allow continuance of existing uses and to assure maximum beneficial utilization of the waters of this state. In so doing, the state engineer shall curtail all out-of-priority diversions, the depletions from which are not so replaced as to prevent injury to vested water rights.

¶35 In our view, the above-quoted statutes are unambiguous, and when read together, they plainly give the State Engineer the authority to issue SWSPs and orders relating to those SWSPs, such as the Order to Comply in this case.

¶36 Specifically, section 501(1) gives the State Engineer authority to administer, distribute, and regulate the waters of the state through validly issued orders such as SWSPs issued under section 308(4). Section 502, in turn, expressly gives the State Engineer the authority to issue orders necessary to implement the provisions of section 501.

18

¶37 Here, the parties do not dispute that the State Engineer lawfully issued the 2020 SWSP pursuant to section 308(4) and thus had the authority to enforce it under section 501. Under the plain language of section 502, then, the State Engineer had the authority to issue the Order to Comply to implement its lawful enforcement of the 2020 SWSP.

¶38 Notwithstanding the foregoing, Front Range argues that section 502(2)(a) limits the engineer's authority to ordering only curtailment of the unauthorized use of water. We disagree.

¶39 As noted above, section 502(1) authorizes the State Engineer to issue orders that are necessary to implement the provisions of section 501. Section 502(1) then expressly states that such orders "includ[e], but [are] not limited to," the orders listed in subsections (2) through (7), only one of which is an order of curtailment. Accordingly, under the plain language of the statute, the State Engineer has the authority to issue orders beyond those described in subsections (2) through (7), and, as a result, section 502 does not limit the State Engineer to ordering only curtailment.

¶40 The statutory scheme as a whole is consistent with our conclusion in this regard. In section 308(4)(a), for example, the legislature authorized the State Engineer to approve SWSPs that cover the same subject matters as are addressed in the corresponding applications for augmentation plans or changes of water

19

rights pending in the water court. And section 308(4)(a)(IV)(A) requires the State Engineer to ensure that SWSPs replace all out-of-priority depletions in time, location, and amount and prevent injury to other water rights and decreed conditional water rights. The State Engineer could not accomplish this directive by curtailment alone.

¶41 Accordingly, we conclude that the State Engineer had the statutory authority to issue the Order to Comply.

## C. Order to Comply After Expiration of an SWSP

¶42 Front Range next contends that the State Engineer lacked the authority to issue the Order to Comply with the 2020 SWSP after the expiration of the SWSP or Front Range's withdrawal of its corresponding water court application. Again, we disagree.

¶43 As noted above, the State Engineer had the statutory authority to issue the Order to Comply in this case, and no one challenges the Engineer's authority to order Front Range to replace depletions caused by Front Range's actions under the 2020 SWSP, some of which, the evidence showed, would be lagging or delayed. In these circumstances, we can perceive no basis—and Front Range cites none—on which to conclude that expiration of the SWSP or withdrawal of the corresponding water court application terminates the State Engineer's authority to enforce obligations established by the 2020 SWSP before it terminated. Were we to rule

otherwise, then an applicant could simply avoid its obligations under an SWSP (e.g., to replace out-of-priority, lagging depletions) merely by withdrawing its corresponding water court application and allowing the SWSP under which it was acting to expire. Such a determination would be absurd, and, as noted above, we must avoid statutory constructions that would lead to absurd results. *Bd. of Cnty. Comm'rs*, ¶ 17, 488 P.3d at 1069.

¶44 In so concluding, we acknowledge that in sections 37-92-308(5)(b)(II) and -308(11)(b)(II), our General Assembly expressly authorized the State Engineer to enforce certain SWSPs, and to include in certain other SWSPs terms and conditions that could be enforced, after the expiration of the SWSP (including terms related to delayed depletions), whereas section 308(4) contains no similar language. We, however, draw no negative inferences from this distinction.

¶45 Section 308(5)(b)(II) concerns SWSPs for precipitation harvesting pilot projects selected pursuant to section 37-60-115(6), C.R.S. (2022). Section 115(6)(c)(II), in turn, expressly authorizes the State Engineer to require the project sponsor to replace any ongoing depletions caused by the pilot project after that project has ceased. Section 308(5)(a)(II) merely (and unsurprisingly) reiterates this requirement from a different statutory provision.

¶46 Section 308(11)(b)(II) concerns SWSPs for coal bed methane wells that withdraw tributary groundwater and impact an over-appropriated stream.

21

Unlike section 308(4) SWSPs that allow temporary operation of a proposed augmentation plan, however, section 308(11) SWSPs are not subject to the requirement in section 37-92-305(8)(c), C.R.S. (2022), concerning the "replacement of out-of-priority depletions that occur after any groundwater diversions cease." Thus, it was necessary for the legislature to clarify that section 308(11) SWSPs may include terms and conditions that remain in effect after the expiration of such SWSPs so as to require the plans' proponents to replace delayed out-of-priority depletions.

¶47 We are not persuaded otherwise by Front Range's various contentions as to why the State Engineer lacked the authority to issue the Order to Comply after the 2020 SWSP expired and Front Range withdrew its water court application. Specifically, Front Range asserts that the State Engineer lacked such authority because (1) section 308(4) authorizes the State Engineer only to approve or deny SWSPs; (2) under *Simpson v. Bijou Irrigation Co.*, 69 P.3d 50, 59–62 (Colo. 2003), only the water court is authorized to approve ongoing out-of-priority diversions using replacement water (and to administer and enforce such out-of-priority diversions); and (3) because section 308(4) contemplates that any appeal of a decision related to an SWSP would be consolidated and heard with the underlying water court application, the statutory scheme does not contemplate that the State Engineer would make a decision regarding an SWSP after the water court application is

dismissed (because consolidation of an SWSP appeal into the water court proceeding would be impossible at that point). We address and reject each of these arguments in turn.

¶48 First, as our foregoing discussion of the statutory scheme demonstrates, the State Engineer's authority regarding an SWSP is not limited to the authority to approve or deny an application. To the contrary, the statutory scheme makes clear that the State Engineer can approve or deny SWSPs, issue orders related thereto, and take whatever actions might be necessary to implement its orders. *See* §§ 37-92-308(4)(a), -501(1), -501.5, -502(1).

¶49 Second, we perceive nothing in *Simpson* that limits the State Engineer's authority relating to SWSPs. In *Simpson*, 69 P.3d at 59–62, we discussed the legislative history whereby the State Engineer at one point was authorized to approve temporary augmentation plans. We ultimately concluded that the legislative scheme, as amended, had left to water courts the authority to approve and decree augmentation plans, but we expressly noted that this limitation was subject to the State Engineer's authority to grant temporary SWSPs under sections 308(3), (4), (5), and (7). *Simpson*, 69 P.3d at 63. Accordingly, *Simpson* is fully consistent with our conclusion today.

¶50 Third, although it is true that section 308(4)(c) provides, "Any appeal of a decision made by the state engineer concerning a substitute water supply plan

23

pursuant to this subsection (4) shall be to the water judge of the applicable water division within thirty days and shall be consolidated with the application for approval of the plan for augmentation," we perceive nothing in this provision that implicates the State Engineer's ability to enforce the terms of an SWSP, including after a water court application is withdrawn. On its face, the statute principally contemplates an appeal of the State Engineer's decision to approve or deny an SWSP application (including the terms thereof). The statute says nothing about the State Engineer's authority to enforce an SWSP. Nor would it make sense to conclude that the State Engineer loses its authority to enforce the terms of an SWSP once a corresponding water court application is no longer pending. As noted above, such a rule would allow an applicant to avoid its obligations under an SWSP simply by withdrawing its water court application, surely an absurd result. Moreover, the water court could ultimately deny the applicant's application. It would be equally absurd to suggest that such a denial would relieve the applicant of its prior and ongoing obligations under an SWSP.

¶51 *WAS*, 221 P.3d at 417, on which Front Range relies, does not suggest otherwise. There, in the context of discussing an SWSP appeal, we stated, "Appellate review of the State Engineer's SWSP decisions are proceedings limited to the appeal of the SWSP itself, and have no effect beyond the SWSP." *Id.* We further observed, "The review is limited to the propriety of the SWSP, and, once

24

the one-year SWSP operational period is over, any injury cannot be addressed in review of the SWSP because the SWSP cannot be modified retroactively." *Id.* Nothing in this language precludes the State Engineer from enforcing an SWSP after a water court application is withdrawn. The language simply notes the scope of an appeal challenging the approval, denial, or terms of an SWSP, which is not the type of appeal that we have before us in this case. Indeed, in *WAS*, we went on to say, "[A]fter expiration of one year, any injury that results from operation of a section 37-92-308(4) SWSP can only be considered in a proceeding other than review of the SWSP pursuant to section 37-92-308(4)." *Id.* This case, which concerns the State Engineer's actions in enforcing an SWSP, is such a proceeding.

¶52 Accordingly, we conclude that the State Engineer retained the authority to enforce the terms and conditions of the 2020 SWSP after the expiration of that SWSP and withdrawal of Front Range's water court application, to the extent that Front Range's obligations under the 2020 SWSP have continuing impacts after the SWSP's expiration or the withdrawal of its water court application.

## D. To Whom SWSP Terms Attach

¶53 Front Range next asserts that the State Engineer erred in ordering that the terms and conditions of the 2020 SWSP attached to it, rather than to the associated water rights. We are not persuaded.

25

¶54 Section 37-92-308(4)(a) authorizes the State Engineer to approve or deny SWSPs. The State Engineer specifically has the authority to approve an SWSP if, as pertinent here, "[t]he water court *applicant* has filed a request for approval of the substitute water supply plan with the state engineer." § 37-92-308(4)(a)(I) (emphasis added). The applicant may then request a renewal of the SWSP by completing the same application process as in the initial SWSP. § 37-92-308(4)(b).

¶55 Notably, in approving an SWSP when the applicant has filed in the water court an application for approval of an augmentation plan or change of water right, the State Engineer must ensure that the operation and administration of the SWSP granted to the applicant "will replace all out-of-priority depletions in time, location, and amount and will otherwise prevent injury to other water rights and decreed conditional water rights . . . ." § 37-92-308(4)(a)(IV)(A).

¶56 And in connection with an augmentation plan, section 37-92-305(8)(c) likewise places the burden on the applicant to provide replacement water:

> A plan for augmentation must be sufficient to permit the continuation of diversions when curtailment would otherwise be required to meet a valid senior call for water, to the extent that the *applicant* shall provide replacement water necessary to meet the lawful requirements of a senior diverter at the time and location and to the extent the senior diverter would be deprived of the senior diverter's lawful entitlement by the *applicant's* diversion.

(Emphases added.)

¶57 This statutory language makes clear that when the State Engineer approves an application for an SWSP, the applicant undertakes the responsibility to comply with the SWSP's terms. Thus, section 308(4) repeatedly focuses on the applicant's obligations. Moreover, in the context of an application for an augmentation plan, section 305(8)(c) directly places the obligation of providing replacement water on the applicant. We perceive no basis for treating SWSPs and augmentation plans differently with respect to who has the obligation to satisfy the terms and conditions of such plans.

¶58 Again, *WAS*, 221 P.3d at 411, is not to the contrary. Indeed, it confirms that the applicant is responsible for all injurious depletions made by the water rights covered by the plan:

> [I]n the context of augmentation plans, it is the water rights included within the plan that are augmented, and those rights must provide replacement water for any injurious depletions they have made, without regard to the individual ownership of the water right. Therefore, use of the term "applicant" does not mean that the party currently applying for approval of the augmentation plan is only responsible for injurious depletions it made itself. *Rather, the "applicant" is responsible for accounting for all injurious depletions made by water rights covered by the plan*.

(Emphasis added.)

¶59 Notwithstanding this unambiguous language, Front Range contends that pursuant to *WAS*, any obligations under an SWSP attach to the water rights and

27

not the applicant itself. Specifically, Front Range points to our statement in *WAS*, 221 P.3d at 409, that

> [w]ater rights are decreed to structures and points of diversion in specified amounts for beneficial uses. Water court approval of a plan for augmentation allows a water right with a junior priority date to divert out-of-priority, provided that the junior right supplies additional augmentation water to offset the out-of-priority depletion. Because water rights are "kept in the name of the diversion or storage structure, rather than by owner name, and water right transfers are not recorded," terms and conditions decreed by the water court attach to the water right and follow it regardless of who may own or operate the right.

(Quoting *Gardner v. State*, 614 P.2d 357, 361 (Colo. 1980); other citations omitted.)

¶60 We did not, however, make this statement in the context of discussing who has the obligation to provide replacement water under an augmentation plan. Rather, we were discussing the water court's jurisdiction to order WAS, as the augmentation plan applicant, to replace pre-2003 (i.e., there, pre-application) depletions. *Id.* We ultimately concluded that when WAS filed its plan for augmentation, it invoked the water court's jurisdiction over the water rights included in the plan. *Id.* As a result, the water court had a duty to ensure that operation of the plan would not injure senior vested water rights and decreed conditional water rights. *Id.* And thus, the water court had properly conditioned approval of the augmentation plan on WAS's providing replacement water for pre-2003 depletions that were currently affecting surface water conditions. *Id.* In short, WAS, as the augmentation plan applicant, was required to undertake the

28

obligation to provide replacement water to prevent ongoing injurious depletions. The same principle applies to Front Range here.

¶61 Accordingly, we conclude that the SWSP's terms in this case, including the requirement that Front Range provide replacement water for out-of-priority depletions, properly attached to Front Range as the applicant, and not to the water rights at issue.

## E. Replacement of Depletions from Pre-Application Pumping

¶62 Front Range next contends that the State Engineer had no authority to require Front Range, as part of the 2020 SWSP, to replace depletions from pre-application pumping. Again, we are unpersuaded.

¶63 Section 37-92-308(4)(a)(IV)(A) provides that the State Engineer may approve SWSPs if, as pertinent here, the State Engineer has determined that the plan "will replace *all* out-of-priority depletions in time, location, and amount and will otherwise prevent injury to other water rights and decreed conditional water rights . . . ." (Emphasis added.) Moreover, the State Engineer has the authority to "impose such terms and conditions as are necessary to ensure that these standards are met." § 37-92-308(4)(a)(IV)(C). In our view, this language alone makes clear that the State Engineer had the authority to require Front Range to replace depletions from pre-application pumping that continued to impact senior water rights and decreed conditional water rights.

29

¶64 Our reasoning in *WAS* further supports our conclusion in this regard. As noted above, in *WAS*, 221 P.3d at 413, we considered the water court's authority to require replacement of depletions from pre-application pumping. We concluded that the water court had such authority:

> In sum, the water court's decision to condition operation of WAS's augmentation plan on replacement of pre-2003 [i.e., pre-application] depletions that have a continuing effect on surface water conditions is supported by the language of section 37-92-305 as well as the 1969 Act's purpose of integrating groundwater into the surface water priority system without causing harm to senior vested rights.

*Id.*

¶65 In our view, this reasoning applies with equal force to the State Engineer's authority under an SWSP. Just as the water court has an obligation to ensure the replacement of all out-of-priority depletions in approving an augmentation plan, § 37-92-305(8)(c), the State Engineer has the obligation to do so in approving an SWSP, § 37-92-308(4)(a)(IV)(A).

¶66 Accordingly, we conclude that the State Engineer in the context of an SWSP, like the water court in the context of an augmentation plan, had jurisdiction to require an applicant like Front Range to replace depletions caused by pre-application pumping.

30

### F. Authority to Order Front Range to Acquire Additional Resources

¶67 Front Range lastly contends that the water court lacked the authority to order, and abused its discretion in ordering, Front Range to acquire additional resources to replace the depletions. We disagree.

¶68 As discussed above, section 502(1) gives the State Engineer the authority to issue orders such as the Order to Comply with the 2020 SWSP in this case. Section 37-92-503(1)(a), in turn, gives the water court the authority to issue an injunction if an applicant does not comply with an order of the State Engineer issued pursuant to section 502:

> In the event an order of a division engineer or the state engineer issued pursuant to section 37-92-502 is not complied with, the state engineer and the particular division engineer in the name of the people of the state of Colorado, through the attorney general, shall apply to the water judge of the particular division for an injunction enjoining the person to whom such order was directed from continuing to violate same.

¶69 The question thus becomes whether the 2020 SWSP required Front Range to acquire additional sources of replacement water, if necessary, such that the water court could properly compel compliance with that requirement. We conclude that the 2020 SWSP included such a requirement.

¶70 The 2020 SWSP expressly required Front Range to provide replacement water to cover all out-of-priority depletions:

> Replacement water shall be made available to cover all out-of-priority depletions in time, place, and amount and shall be made available

31

under the direction and/or approval of the water commissioner. . . . Replacement of lagged depletions shall continue until there is no longer an effect on stream flow.

¶71 The 2020 SWSP further authorized Front Range to provide replacement water from additional sources, if needed:

> The Applicant has proposed to use water owned or leased by Front Range from any other source legally available for augmentation and which can be provided in the amount, at the time, and at the location required to replace out of priority depletions from the Horton Wells. Additional sources of replacement water in this SWSP may only be used if the Applicant complies with the attached Division One Administration Protocol "Use of Replacement Sources Not Specifically Identified in an SWSP or Augmentation Plan."

¶72 And, consistent with the foregoing provisions, the Order to Comply required Front Range to

> [p]rovide replacement water to the stream system to cover all out-of-priority depletions in time, place, and amount, from the replacement sources approved under the 2020 Approval [i.e., the 2020 SWSP] under the direction and/or approval of the water commissioner. . . . Replacement of lagged depletions must continue until there is no longer an effect on stream flow.

¶73 The Order to Comply further required Front Range to provide a plan for near-term replacement, describing how Front Range would provide the requisite replacement water, expressly noting that this plan "may include sources in addition to the sources specifically identified in the 2020 Approval," if approved by the Division Engineer.

32

¶74    In our view, the above-quoted provisions of the 2020 SWSP required Front Range, when necessary, to acquire replacement water from established or additional sources to cover *all* out-of-priority depletions until stream flow is no longer impacted. And for the reasons discussed above, the Order to Comply properly enforced this requirement.

¶75    Accordingly, we conclude that the water court acted within its discretion when it enforced the Order to Comply by requiring Front Range to acquire the right to use additional sources, if necessary, to replace injurious depletions.

## G. Attorney Fees and Costs

¶76    The Engineers seek to recover their reasonable attorney fees and costs pursuant to section 37-92-503(1)(b), including the fees and costs associated with this appeal, as permitted by *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶¶ 49–52, 465 P.3d 554, 564. Section 503(1)(b) provides that, in an injunction proceeding arising from a party's failure to comply with a State Engineer's order issued pursuant to section 502, "if the court upholds the order of the state engineer, the person against whom such order was issued shall pay the costs of the proceeding, including the allowance of reasonable attorney fees."

¶77    Because the water court upheld the orders of the State Engineer and we have affirmed the water court's determination in this appeal, we conclude that the Engineers are entitled to recover their reasonable attorney fees and costs,

33

including those incurred in the appeal in case no. 22SA211. Pursuant to C.A.R. 39.1, we exercise our discretion to remand this case to the water court to determine the amount of reasonable attorney fees and costs to be awarded.

## H. Appeal in Case No. 21SA138

¶78 Finally, the parties agree that if we affirm the water court's judgment in case no. 22SA211, as we have done, then the Engineers' appeal in related case no. 21SA138 becomes moot. We also agree. Accordingly, we conclude that the appeal pending in case no. 21SA138 is moot and should be dismissed.

## III. Conclusion

¶79 For the foregoing reasons, we conclude that (1) the State Engineer had the authority to issue the Order to Comply; (2) the State Engineer had the authority to enforce the terms and conditions of the 2020 SWSP after the expiration of that SWSP and Front Range's withdrawal of its related water court application; (3) the State Engineer properly attached the 2020 SWSP terms and conditions to Front Range, as opposed to the water rights at issue; (4) the State Engineer had jurisdiction to require the replacement of depletions from pre-application pumping; and (5) the water court properly exercised its discretion in ordering Front Range to acquire additional replacement sources. We further conclude that the Engineers are entitled to recover their reasonable attorney fees and costs,

34

including those incurred in the appeal in case no. 22SA211. And we conclude that the Engineers' appeal in case no. 21SA138 is moot.

¶80 Accordingly, we affirm the water court's judgment in case no. 22SA211, remand that case to the water court to determine the reasonable attorney fees and costs to be awarded, and dismiss the Engineers' appeal in case no. 21SA138.